**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  | * |  |
|---|---|---|
| **THOMAS HOWES,** | * |  |
| Plaintiff, | * |  |
| v. | * | Case No.: PWG-16-2952 |
| **NEW YORK LIFE INSURANCE COMPANY,** | * |  |
| Defendant. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

For a five-year period, Plaintiff Thomas Howes worked as an insurance agent for Defendant New York Life Insurance Company ("NY Life") selling the company's insurance products to a robust client base that he established during his 24-year career as an insurance agent and financial planner. In March 2016, NY Life terminated its relationship with Howes because he allegedly failed to disclose and concealed a tax lien against him. Subsequently, NY Life sent notices to Howes's customers who owned NY Life products, notifying them that Howes had been terminated as a NY Life agent. Howes alleges that these notifications defamed him and interfered with his business relationship with his clients and seeks declaratory and injunctive relief to force NY Life to cease its actions. Pending before the Court are Howes's Motion for Injunctive and Declaratory Relief, ECF No. 19, and NY Life's Motion to Dismiss, ECF No. 14. The Motions are fully briefed, Def.'s Mem., ECF No. 14-1; Pl.'s Opp'n, ECF No. 18; Pl.'s Mem., ECF No. 19-1; Def.'s Reply & Opp'n, ECF No. 20; Pl.'s Reply, ECF No. 21, and no hearing is necessary, Loc. R. 105.6 (D. Md.). Because Howes fails to plead the necessary

elements of any claim, I will grant NY Life's Motion to Dismiss, which renders moot Howes's Motion for Injunctive and Declaratory Relief.

### Background

During his 24-year career as an insurance agent and financial planner, Howes established a large client base whose business he values at $70 million. Compl. ¶¶ 13–14, ECF No. 2. In 2011, Howes signed a Contract with NY Life to receive commissions for selling the insurance company's products to his customers. *Id.* ¶ 22; Agent's Contract ¶¶ 6, 9, J.A. Ex. C.[1] The Contract characterized Howes as an independent contractor and authorized either party to terminate the relationship with or without cause. Agent's Contract ¶¶ 7, 19–20. In March 2016, NY Life terminated its relationship with Howes. Compl. ¶ 32. In a public disclosure required by the Financial Industry Regulatory Authority ("FINRA"), NY Life stated that it terminated its relationship with Howes because he "failed to timely disclose a 2012 federal tax lien." *Thomas W Howes*, FINRA BrokerCheck, https://brokercheck.finra.org/individual/summary/2306099 (last visited Mar. 29, 2017); *see also* FINRA By-Laws art. V, § 3, FINRA Rules 4530(a)(2), 8312(b)(2)(A); FINRA Regulatory Notice 10-39.[2]

---

[1] Citations to J.A. refer to the Joint Appendix that the parties submitted in the case, which appears at ECF Nos. 14-2 to -6.

[2] In reviewing a motion to dismiss, a district court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Complaint incorporates this webpage by referencing attached letters that NY Life sent to Howes's customers, which notified them of the termination and provided a link for customers to obtain more information. *See* Compl. ¶ 34; Compl. Attach 1, ECF No. 2-1. The linked webpage is integral to and relied on in the Complaint because it contains the allegedly "false and defamatory information" that appears to be the basis of Howes's claims. Compl. ¶ 36. Additionally, the court "may properly take judicial notice of matters in the public record" at the motion-to-dismiss stage. *Phillips*, 572 F.3d at 180. As NY Life's disclosed reason for terminating Howes is publicly available on the FINRA website, I take judicial notice of that fact. *See* Fed. R. Evid. 201(b)(2), (c)(1).

Following the termination of the Contract, NY Life mailed letters to Howes's customers to whom he had sold NY Life products. *See, e.g.*, Letter from Scott W. Weinstein, Vice President, N.Y. Life Ins. Co., to Kimberly Ann Scott (July 11, 2016), J.A. Ex. A. These letters informed the customers that Howes, "who served as your agent, is no longer associated with New York Life" and sought confirmation that the company had a complete list NY Life policies and accounts owned by the customers. *Id.* The letters also directed customers to FINRA's BrokerCheck webpage for "additional information about registered representatives, including this agent [Howes]." *Id.* By searching Howes's name on the webpage, it is possible for any member of the public to find NY Life's publicly-disclosed reason for terminating its relationship with Howes. *Thomas W Howes*, FINRA BrokerCheck, *supra*. In addition, sometime after NY Life terminated Howes's Contract, one of Howes's customers spoke to a NY Life employee at a tennis court who told the customer that Howes had been "fired" and speculated that "whatever [he] did must have been egregious to be terminated so quickly." Text Message, J.A. Ex. B.

In June 2016, Howes initiated FINRA arbitration against the company and ten other individuals, leveling many of the same allegations against NY Life that he does in the Complaint filed in this Court. FINRA Arbitration Submission Agreement, J.A. Ex. D. Two months later, he filed the instant Complaint in the Circuit Court for Montgomery County and sought a Temporary Restraining Order prohibiting NY Life from contacting his clients. Compl.[3] NY Life then removed the case to this Court, Notice of Removal, ECF No. 1, where the Parties filed the pending motions.

---

[3] NY Life concedes that although the Agent's Contract contained a mandatory arbitration provision, *see* Agent's Contract ¶ 24, FINRA Rules permit individuals subject to arbitration clauses to seek preliminary-injunctive relief from judicial tribunals. Def.'s Reply & Opp'n 2; *see also* FINRA Rule 13804 (authorizing "[p]arties to a pending arbitration [to] seek a temporary injunctive order from a court of competent jurisdiction" but requiring permanent injunctions to be sought at the arbitration hearing).

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

NY Life argues that the Complaint should be dismissed because Howes "has not alleged the *prima facie* elements of any legal claim." Def.'s Mem. 8. The Complaint best can best be described as an unguided missile, with components evocative of consumer-fraud, defamation, declaratory-judgment, false-light, tortious-interference-with-contract, misappropriation-of-trade-

secrets, and wrongful-termination claims, but devoid of any allegations establishing the elements of any of those claims.[4]

## Maryland Consumer Protection Act

Most concretely, Howes alleges (in conclusory terms)—but does not explain how—NY Life's "conduct . . . constitutes unfair and deceptive trade practices in violation of" the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 to -501.  Compl. ¶ 3.  That statute provides a cause of action for victims of unfair and deceptive trade practices, as defined by the law, to seek money damages, Md. Code Ann., Com. Law, § 13-408, a form of relief that Howes does not and cannot seek outside of arbitration, Agent's Contract ¶ 24.a ("[A]ny dispute, claim or controversy arising between the Parties . . . shall be resolved by an arbitration proceeding administered by FINRA . . . ."); Compl. ¶ 1 ("This is an action for a declaratory judgment and Injunctive Relief . . . . No money damages are sought."). "[D]eclaratory and injunctive relief is not available under the . . . MCPA." *Horowitz v. Cont'l Cas. Ins.* No. DKC 14-3698, 2015 WL 9460111, at *6 (D. Md. Dec. 28, 2015) (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 733 (D. Md. 2011)).

Moreover, as the statute's title suggests, the MCPA provides a remedy to injured consumers, not vendors.  This is further illustrated by the elements of an MCPA claim, which Howes neither enumerates nor alleges facts to support.  To establish a MCPA claim, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that (2) *is relied upon*, and

---

[4]In the submission dubbed a Complaint, Howes actually welds together both a complaint and a memorandum in support of injunctive relief into a single document.  Compl. 9–21.  "[F]or the purposes of a motion to dismiss, [a] [p]laintiff is bound by her [c]omplaint and cannot amend it through her briefs."  *Stahlman v. United* States, 995 F. Supp. 2d 446, 455 (D. Md. 2014). Accordingly, I will exclude from my analysis of the Complaint any additional information provided in the attached memorandum.  But even if I were to consider the "verified" allegations in Howes's memorandum, they would not change the outcome because they are no less conclusory than his Complaint.

5

(3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (emphasis added) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257 (Md. 2007)).  Even if NY Life's public disclosure of its reason for terminating its Contract with Howes constituted an unfair or deceptive practice, Howes could not have relied upon the representations made by the company.  He knew the true reason for his termination—whatever that was—and could not have been deceived into taking an action to his detriment by NY Life's account of the events.  Howes does not and cannot state a MCPA claim.

## Defamation

At several points throughout the Complaint, Howes describes NY Life's disclosure concerning the termination of his Contract as defamatory.  Compl. ¶¶ 1 ("[NY Life's] libelous statements are used to create a negative image of plaintiff in order to wrongfully compete with Palintiff and solicit Plaintiff's clients . . . ."), 3 ("NYL is defaming or placing Plaintiff in a negative light in order to steal his business clientele . . . ."), 35 ("The fact that clients have NYL products does not provide the right by NYL to defame [him] . . . ."), 36 ("NYL through its agents have directly contacted Plaintiff's clients by mail and phone with false and defamatory statements or information . . . .").

To establish a defamation claim under Maryland law[5] against a non-public figure, a plaintiff must allege:

---

[5] The Parties do not explicitly discuss choice of law, but both cite to Maryland law throughout their briefing, apparently conceding that Maryland law governs the claims.  *See* Def.'s Mem. 9; Pl.'s Mem. 8.  Moreover, whatever the vagaries of Howes's Complaint, it is clear that his claims arise out of Maryland statutory law and tort law.  Maryland courts adhere to the doctrine of *lex loci delicti* when determining the law that governs tort claims, meaning the law of state where the injury occurred applies.  *Lewis v. Wletzky*, 31 A.3d 123, 129 (Md. 2011).  Howes both lived and worked in Maryland, Compl. ¶¶ 8–9, so any injury to his reputation and business occurred there.  Maryland law applies.

>   (1) that the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 317 (Md. 1995) (quoting *Kairys v. Douglas Stereo Inc.*, 577 A.2d 386, 391 (Md. Ct. Spec. App. 1990).

Although Howes expresses his belief that the stated reason for the termination of his Contract—his alleged failure to disclose a tax lien—was pretextual, he never suggests that NY Life offered a different explanation for its decision.  Compl. ¶ 1 ("New York Life wrongfully terminated Plaintiff's employment as pretext to wrongfully compete and solicit Plaintiff's clients."), 32 ("NYL under false pretenses terminated Plaintiff from his employment by NYL . . . .").  Howes insists in his Memorandum in Support of his Motion for Injunctive and Declaratory Relief—but not in his Opposition to NY Life's Motion to Dismiss—that he did disclose the 2012 tax lien against him to NY Life.  Pl's Mot. 8–9.  But he never disputes the veracity of the allegation in his Complaint, which cannot be amended by an opposition brief, let alone a memorandum in support of a different motion.  *Stahlman*, 995 F. Supp. 2d at 455.  Thus, Howes has not pleaded the falsity of NY Life's publicly disclosed reason for terminating the Contract.  Accordingly, to the extent that the Complaint raises a defamation claim, it fails.

But even if Howes had pleaded the falsity of NY Life's disclosure, he still would not be entitled to the relief he seeks.  The ordinary remedy for defamatory statements is money damages.  *Prucha v. Weiss*, 197 A.2d 253, 256 (Md. 1964).  But as previously discussed, Howes must pursue money-damage claims against NY Life through arbitration.  *See* Agent's Contract ¶ 24.a.  To the extent that he seeks injunctive relief barring NY Life from publicizing its asserted reason for terminating his employment, this is not a remedy available to victims of defamation

under Maryland law. *Prucha*, 197 A.2d at 256 ("We agree with the prevailing concept in other jurisdictions that a person allegedly injured by a libelous publication has no right to seek injunctive relief in equity. He has an adequate remedy at law for damages."). Accordingly, any attempt to amend the Complaint to state a defamation claim would be futile, and I will therefore dismiss the claim with prejudice.[6]

### Declaratory Judgment

Howes also describes his suit as a declaratory-judgment action brought pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 to -415. But one searches the Complaint in vain for any alleged ambiguity concerning Howes's "rights, status, or other legal relations" under his terminated Contract or under any law. *Id.* § 3-406. I am unable to discern how a declaratory judgment would in any way facilitate Howes's goal of preventing NY Life from contacting or soliciting his clients, and the Complaint certainly does not allege any facts that establish his entitlement to declaratory relief.

### Additional Miscellaneous Claims

Howes also makes passing and conclusory references to various other legal theories, including tortious interference with contract, *id.* ¶¶ 32, 34–36 (accusing NY Life of "interfer[ing]" and "steal[ing]" his clients), misappropriation of trade secrets, *id.* ¶ 35 (describing his "business relationships" with his clients as "a trade secret" that is "protected under the laws of the State of Maryland"), and wrongful-termination, *id.* ¶ 1 ("New York Life wrongfully

---

[6] To the extent that Howes attempts to state a false-light claim, *see* Compl. ¶¶ 1, 3 (alleging that statements "create[d] a negative image" and "plac[ed] [him] in a negative light"), it is dismissed with prejudice for the same reasons. *See Piscatelli v. Van Smith*, 35 A.3d 1140, 1146–47 (Md. 2012) (noting that "[a]n allegation of false light must meet the same legal standards as an allegation of defamation" and therefore declining to analyze a plaintiff's false-light claim separately from his defamation claim because the two analyses would be "superfluous").

terminated Plaintiff's employment . . . ."). But passing references to legal labels do not state claims.

## Conclusion

Because Howes's Complaint fails to state any claim for which relief can be granted, I will grant NY Life's Motion to Dismiss. Accordingly, Howes's Motion for Injunctive and Declaratory Relief is moot and will also be denied. Given the numerous deficiencies in Howes's Complaint and his briefing, I also find that any attempt to amend the Complaint would be futile. *See Laber v. Harvey*, 483 F.3d 404, 426 (4th Cir. 2006) (interpreting Fed. R. Civ. P. 15(a) "to provide that 'leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.' " (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986))). Of the many claims that Howes references, only the defamation claim seems arguably applicable to the injury that he describes, but, as discussed *supra*, he cannot obtain the injunctive relief that he seeks through a defamation cause of action. Accordingly, I will dismiss the Complaint with prejudice.

A separate Order follows.

Dated: March 30, 2017

/S/
Paul W. Grimm
United States District Judge

jlb